IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3163-FL

| | | |
|---|---|---|
| TYRONE MATTHEW DELGADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GEORGE SOLOMON, DAVID GUICE, | ) | |
| JOHN HERRING, ANTHONY SPRUILL, | ) | |
| and KENNETH CABARRUS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (DE 55). Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants the motion.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on July 1, 2016, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants George Solomon ("Solomon"), David Guice ("Guice"), John Herring ("Herring"), Anthony Spruill ("Spruill"), and Kenneth Cabarrus ("Cabarrus"), failed to protect him from an assault, in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages, and various forms of injunctive relief.

On December 6, 2016, the court conducted its frivolity review of plaintiff's complaint and allowed the matter to proceed. Defendants filed answer on April 7, 2017, denying plaintiff's allegations and asserting various affirmative defenses. On May 23, 2017, the court entered case

management order governing discovery and dispositive motions practice. During the discovery period, plaintiff filed three motions to compel and a motion for issuance of subpoenas. The court denied these discovery motions with the exception that it directed defendants to respond to two of plaintiff's interrogatories. The parties completed discovery on or about November 17, 2017.

Defendants initially moved for summary judgment on May 18, 2018, primarily arguing that plaintiff failed to exhaust administrative remedies prior to filing this action. On February 21, 2019, the court denied the motion as to the administrative exhaustion defense. The court then invited the parties to file additional dispositive motions addressing the substance of plaintiff's claims.

Defendants filed renewed motion for summary judgment on April 8, 2019, supported by memorandum of law, statement of material facts, and the following: 1) affidavits of defendants; 2) plaintiff's administrative grievances; 3) incident report regarding the assault; 4) plaintiff's infraction information; and 5) video surveillance footage of the assault.[1]

Plaintiff responded in opposition on May 7, 2019, supported by opposing statement of material facts, memorandum of law, and the following: 1) plaintiff's declaration; 2) affidavits of defendants Spruill and Cabarrus; 3) North Carolina Department of Public Safety (DPS) classification committee records; 4) witness statements from plaintiff's disciplinary proceedings; 5) correspondence from plaintiff to defendant Solomon, dated February 29, 2016; 6) plaintiff's emergency grievance concerning the assault; 7) correspondence from defendant Herring to plaintiff, dated February 23, 2015; 8) photographs of plaintiff's injuries; 9) plaintiff's administrative grievance records; and 10) newspaper article regarding staff misconduct at North

---

[1] The video recording is on a compact disc filed manually with the clerk of court.

Carolina correctional facilities.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. Defendants Cabarrus and Spruill are correctional unit managers at the Bertie Correctional Institution ("Bertie C.I."). (Cabarrus Aff. (DE 58-4) ¶ 3; Spruill Aff. (DE 58-1) ¶ 3). During the relevant timeframe, they were the unit managers assigned to Green Unit where plaintiff was housed. (See Pl.'s Decl. (DE 62-1) ¶ 7; Spruill Aff. (DE 58-1) ¶ 3; Cabarrus Aff. (DE 58-4) ¶ 3; Emergency Grievance (DE 63-1) at 24).[2] Defendants Solomon, Guice, and Herring are DPS supervisory officials. (Solomon Aff. (58-5) ¶ 3; Guice Aff. (DE 58-8) ¶ 3; Herring Aff. (DE 58-9) ¶ 3).

On an unidentified date, plaintiff submitted a grievance to defendants Cabarrus and Spruill, complaining that "gangs were attacking inmates on [the Green Unit]." (Pl.'s Decl. (DE 62-1) ¶ 7). Plaintiff also alleged that gang members were forcing inmates who were not part of the gang to "lock down," which requires staying in their cells on the unit. (Id. ¶ 9). According to plaintiff, defendants Cabarrus and Spruill threatened plaintiff and another inmate with unspecified "retaliation" if they did not rescind the grievance. (Id.). Also on an unspecified date, plaintiff witnessed defendants Cabarrus and Spruill inform the inmates that assaulted him "which inmates were filing grievances against them and what was in the grievances." (Id. ¶ 12). Cabarrus and Spruill allegedly allowed the gang members to "lock down" the unit and otherwise assault other inmates to protect a contraband smuggling operation. (Id. ¶¶ 14, 16; see also Pl.'s Resp. (DE 62)

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

at 15-16). According to plaintiff, defendants Cabarrus and Spruill "turned a blind eye" to the assaults perpetrated by the gang members. (Pl.'s Decl. (DE 62-1) ¶ 17).

On November 8, 2015, plaintiff was assaulted by inmates Travis Williams, Ivan Harvey, and Marcus Currie in a private cell. Defendants produced a video recording of the incident. The relevant portion of the recording begins with plaintiff and Williams talking in the common area of the unit ("day room").[3] (Video Recording (DE 59) at 3:06:00). Williams then walks over to the table where plaintiff is seated, and plaintiff stands up, positioning his body within inches of Williams. (Id. at 3:06:00-3:06:24). After a short discussion, plaintiff appears to put his left arm on Williams's back, which Williams immediately pushes away. (Id. at 3:06:19-3:06:27). Plaintiff and Williams then move even closer to each other and appear to be arguing. (Id. at 3:06:27-3:06:30). Williams begins walking away from the altercation, and plaintiff moves to the side to let him pass. (Id. at 3:06:30-3:06:31). Plaintiff then voluntarily follows Williams into a cell in the back of the unit, where they disappear from view. (Id. at 3:06:31-3:06:48). As plaintiff is walking towards the cell, he turns around and observes either Harvey or Currie following him. (Id.). Currie and Harvey appear to follow plaintiff and Williams into the cell. (Id. at 3:06:48-3:07:29; Emergency Grievance (DE 63-1) at 25). Plaintiff attests that he had "no choice" but to enter the cell with Williams because if he failed to do so, Williams or other gang members would have assaulted him at a later point in time. (Pl.'s Decl. (DE 62-1) ¶¶ 18-19).

Plaintiff was assaulted by Williams, Currie, and Harvey, who repeatedly punched and stabbed him with a knife. (Emergency Grievance (DE 63-1) at 25). Plaintiff suffered multiple

---

[3] The recording does not have sound. Plaintiff admits, however, that he and Williams had an unspecified "conflict." (Pl.'s Resp. (DE 62) at 12). In the recording, plaintiff is the person seated at the middle table and Williams is the person standing on the far-left side of the day room. (Video Recording (DE 59) at 3:06:00-3:06:48).

broken bones in his face, swollen and bloody eyes, and a collapsed eardrum. (Id. at 26; see also Incident Report (DE 58-2) at 7-8). Plaintiff admits that defendants Spruill and Cabarrus were not present in the Green Unit when the assault occurred. (See Pl.'s Resp. (DE 62) at 17 (stating "the video show[s] [no] action being taken by those staff members working under [defendants Cabarrus and Spruill at the time of the incident]")).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor."  Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."  Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted).  Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture."  Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.  Id. at 489–90.

B.   Analysis

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments."  U.S. Const. amend. VIII.  Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate

indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). Under the first prong, "a prisoner must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation omitted); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014) (internal quotation omitted). Here, defendants do not contest that plaintiff suffered serious injuries and has adduced sufficient evidence to create a genuine factual dispute as to the objective prong. Thus, the court proceeds to the deliberate indifferent analysis.

The deliberate indifference prong requires a showing that defendants knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837-38; Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by producing direct evidence showing the prison official had actual knowledge of the risk and failed to protect him. Farmer, 511 U.S. at 842-43. As an alternative, "a prison official's subjective actual knowledge can be proved through circumstantial evidence" by showing that the risk was "obvious" and that the circumstances suggest the defendant must have known about it. Makdessi, 789 F.3d at 133; see also Farmer, 511 U.S. at 842. Beyond actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation marks and citation omitted).

Plaintiff has not produced sufficient evidence of deliberate indifference to survive defendants' motion for summary judgment. As to direct evidence of deliberate indifference, plaintiff has not shown that he informed defendants prior to the assault that housing him on the

Green Unit posed a substantial risk of harm. Plaintiff argues that he submitted a grievance to defendants Cabarrus and Spruill complaining that unspecified "gang members" were assaulting other inmates. (Pl.'s Decl. (DE 62-1) ¶¶ 7, 9). He also "witnessed" defendants Cabarrus and Spruill inform the inmates that assaulted him "which inmates were filing grievances against them and what was in the grievances." (Id. ¶ 12). Plaintiff, however, did not produce the grievance submitted to defendants Cabarrus and Spruill, and there is no indication in the record that these incidents occurred before plaintiff's November 8, 2015, assault. More importantly, plaintiff does not attest – and has not produced a grievance or other documentation showing – that he informed defendants prior to the assault that plaintiff himself needed protection from any gang members or that he felt threatened by any inmates on the Green Unit. (See Pl.'s Decl. (DE 62-1) ¶¶ 7, 9); see also Makdessi, 789 F.3d at 134-35 (concluding evidence showing plaintiff repeatedly requested protection from assaults may be sufficient to establish deliberate indifference).

As noted, plaintiff also may establish deliberate indifference by showing that "the circumstances made it reasonable to believe that the defendants were aware of a serious risk to the plaintiff but took no protective action." Makdessi, 789 F.3d at 135 (citing Farmer, 511 U.S. at 848-49). In order to prove deliberate indifference through circumstantial evidence, plaintiff must establish the risk of harm was "obvious." Farmer, 511 U.S. at 842. For example, the risk may have been "longstanding, pervasive, well-documented or expressly noted by prison officials in the past, and the circumstances suggest the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Makdessi, 789 F.3d at 133.

Plaintiff notes that he submitted one grievance to defendants Cabarrus and Spruill complaining about gang assaults on the unit. Even assuming plaintiff submitted this grievance

8

before the assault, one grievance – which itself has not been produced to the court – hardly constitutes evidence of a longstanding, pervasive, or well-documented risk. See id. at 135 (explaining evidence that plaintiff complained to prison officials "for years . . . about physical and sexual abuse he suffered in prison" may be sufficient to establish deliberate indifference through circumstantial evidence); Lindell v. Houser, 442 F.3d 1033, 1035 (7th Cir. 2006) (holding solitary complaint that plaintiff feared for his safety was insufficient to establish defendants disregarded a known risk of harm and noting "prison guards are not required to believe every profession of fear by an inmate").[4]

To the extent plaintiff's argument is that it should have been "obvious" to defendants Cabarrus and Spruill that allowing gang members to police the unit created an unreasonable risk of harm to plaintiff, the court agrees with defendants that there is insufficient evidence of such actions to survive a motion for summary judgment. As noted above, defendants are not required to believe every unsupported profession of fear by an inmate, and thus plaintiff's one complaint to them is not sufficient to show an obvious risk of harm. See Lindell, 442 F.3d at 1035. And beyond plaintiff's unsupported assertions, there is no record evidence of an obvious risk of harm. Plaintiff, for example, offers no grievance, request to staff, or other official record demonstrating that he informed prison officials about gang activity on the Green Unit prior to the assault. Notably, in their first motion for summary judgment, defendants produced six grievances plaintiff submitted between February 6, 2013, and November 8, 2015 (the date of the assault), none of

---

[4] Plaintiff does not attempt to establish deliberate indifference by showing that his "physical condition and appearance, coupled with the knowledge of violent assaults in the prison" puts him at greater risk for abuse. See Farmer, 511 U.S. at 848-49. As reflected on the video recording, plaintiff's stature and build do not suggest that he needs special protections. See Makdessi, 789 F.3d at 134-35 (explaining that placing a plaintiff who was a "short, middle-aged prisoner with physical and mental problems that make him vulnerable to harassment and attacks by other inmates" in a cell with an aggressive gang member may be sufficient to establish deliberate indifference).

which complained about defendants Cabarrus or Spruill using gang members to "police" the Green Unit or that plaintiff was concerned for his safety. (See DE 48-3, 48-4, 48-5, 48-6, 48-7, 48-8) Plaintiff also offers no documentary evidence or witness statements showing that any other inmates were assaulted on the Green Unit or voiced any concerns about gang activity or assaults on the unit. Plaintiff's unsupported assertions that inmates were regularly assaulted on the Green Unit are not sufficient to defeat defendants' motion for summary judgment. See Danser, 772 F.3d at 348 n.10 (explaining "unsupported speculation" is insufficient to establish deliberate indifference); Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004) (stating that a party's "self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment"); Evans Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (noting "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment).

The court also observes that plaintiff's claims that he was fearful of an attack by Williams, Harvey, or Currie is blatantly contradicted by the video recording of the incident. As reflected on the recording, when Williams began walking towards plaintiff, he stood up from the table and positioned himself within inches of Williams. Plaintiff also appears to place his hand on Williams back, which Williams promptly pushes away. Williams then disengaged from the verbal altercation and walked away from plaintiff with his back turned. At this point, plaintiff was entirely free to seek protection from corrections officers stationed in the unit, including by asking for immediate placement in protective custody, or to simply not follow Williams into a private cell.[5]

---

[5] As noted, according to plaintiff's own allegations, defendants Cabarrus and Spruill were not present in the day room at the time of the assault, thus negating any suggestion that plaintiff could not approach correctional staff about his concerns. Plaintiff has produced no evidence that the correctios officers stationed on the unit would not have honored a request for protective custody.

Instead of seeking protective custody, plaintiff voluntarily walked to a private cell with Williams, where no corrections officers were present and which was outside the range of the security cameras. As plaintiff was walking towards the cell, he saw either Harvey or Currie walking behind him, and he still did not return to the day room area or seek protective custody. And plaintiff followed Williams despite the fact that he allegedly is a known gang member who had free rein to assault inmates on the unit.[6] These actions are not consistent with plaintiff's allegations that he feared for his safety. Although plaintiff alleges he had "no choice but to walk to the back of the dorm and try to talk the gang members down from attacking the plaintiff" the video evidence summarized above directly contradicts these assertions. (Pl's Decl. (DE 62-1) ¶ 18). The video recording thus severely undercuts plaintiff's conclusory assertions that he feared for his safety on the Green Unit, and by extension his claim that defendants were deliberately indifferent to a known risk of harm. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, such that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[7]

---

[6] Plaintiff's voluntary decision to walk to the back of the unit with Williams also presents a causation problem. To the extent plaintiff seeks compensatory damages, his claims are governed by proximate cause principles. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305–06 (1986) (proximate cause principles apply to § 1983 claims); !Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (same). Under the proximate cause doctrine, "subsequent acts of independent decision-makers . . . may constitute intervening superseding causes that break the causal chain" and insulate prison officials from § 1983 liability. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012); Kane v. Lewis, 604 F. App'x 229, 234-35 (4th Cir. 2015); see also Lamont v. New Jersey, 637 F.3d 177, 185 (3d Cir. 2011). Plaintiff's decision to follow Williams into the cell clearly constitutes an intervening event that breaks the causal chain between defendants Cabarrus and Spruill's alleged actions and the assault.

[7] The court recognizes that Scott is the "exception, not the rule" and thus generally the court must adopt the plaintiff's version of the facts when ruling on a motion for summary judgment. See Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019). In this case, the undisputed video evidence directly contradicts plaintiff's allegations that he was fearful for his safety, and when considered in context of the record evidence as a whole, supports the court's finding that plaintiff has failed to marshal sufficient evidence to survive summary judgment.

Finally, the court turns to plaintiff's claims against defendants Solomon, Guice, and Herring. These defendants were prison administrators with either DPS or the Bertie C.I. during the relevant timeframe. To the extent plaintiff is alleging a direct Eighth Amendment claim against them, plaintiff has produced no evidence that that they had actual knowledge of a risk of harm to plaintiff before he was assaulted. Although plaintiff wrote to both defendants Solomon and Herring about the assault after it occurred, a failure to protect claim requires prior knowledge of a known risk of harm. See Farmer, 511 U.S. at 842; Makdessi, 789 F.3d at 133.

Plaintiff arguably is attempting to bring a claim for supervisory liability against these defendants. To establish supervisory liability, plaintiff must show, among other things, that "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation omitted). For the reasons discussed above, plaintiff has failed to produce any verified evidence that the supervisory defendants had actual or constructive knowledge that prison officials were failing to protect him from a known risk of harm.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment, (DE 55). The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of March, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge